FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

AT BALTIMORE

BY _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :      CIVIL NO. **DKC14CV0592** |
| | : |
| $1,472,539.37 IN UNITED STATES | : |
| CURRENCY AND | : |
| EIGHT VEHICLES, | : |
| | : |
| Defendant. | : |

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, through undersigned counsel, brings this complaint and alleges as follows, in accordance with Supplemental Rule G of the Federal Rules of Civil Procedure.

### Nature of the Action

1.      This is a civil forfeiture action against U.S. currency and vehicles that were involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h), that constitute or are derived from proceeds traceable to a violation of 18 U.S.C. §§ 1343 and 1349, and that also are forfeitable under 19 U.S.C. §1595a.

### Defendant In Rem

2.      The Defendant Property is $1,472,539.37 in United States Currency seized from bank accounts further identified below (hereinafter, "Defendant Currency") and eight vehicles further

- 1 -

identified below valued at approximately $389,790 (hereinafter, "Defendant Vehicles" and, collectively with Defendant Currency as "Defendant Property"):

a. **Defendant Currency**

i. $481,914.43 from Wells Fargo account ending in #7695 in the name of Golden Skyways, Inc.;

ii. $10,725.31 from Wells Fargo account ending in #8639 in the name of Golden Skyways, Inc.;

iii. $4,396.07 from Wells Fargo account ending in #3223 in the name of Golden Skyways, Inc.;

iv. $300,447.84 from Wells Fargo account ending in #8787 in the name of Southeast Autos Rentals and Leasing Corp.;

v. $575,244.84 from Wells Fargo account ending in #6095 in the name of Royce Autos, Inc.;

vi. $27,504.95 from Wells Fargo account ending in #2633 in the name of Western Motor Group LLC;

vii. $332.22 from BB&T Bank account ending in #1489 in the name of Southeast Autos Rentals and Leasing Corp.;

viii. $208.41 from BB&T Bank account ending in #1785 in the name of Golden Skyways, Inc.;

ix. $66,407.44 from First General account ending in #4127 in the name of Auto Investment Enterprise Corp.; and

x.  $5,357.86 from First General account ending in #4721 in the name of Golden Skyways, Inc.

**b.**   **Defendant Vehicles**

i.  **Defendant Vehicle #1**: 2013 Toyota 4 Runner, VIN#JTEBU5JR4D5137101 (CA), with an estimated value of $33,215, with export attempted by Golden Skyways, Inc.;

ii.  **Defendant Vehicle #2**: 2014 Toyota 4 Runner, VIN#JTEBU5JR5D5136717 (CA), with an estimated value of $33,215, with export attempted by Golden Skyways, Inc.;

iii.  **Defendant Vehicle #3**: 2013 BMW X5, VIN#5UZV4C59D0E09063 (CA), with an estimated value of $51,900, with export attempted by Auto Investment Enterprise Corp.;

iv.  **Defendant Vehicle #4**: 2013 Porsche Cayenne, VIN# WP1AA2A28DLA08847 (CA), with an estimated value of $48,850, with export attempted by Auto Investment Enterprise Corp.;

v.  **Defendant Vehicle #5**: Mercedes Benz ML350, VIN# 4JGDA2EB9DA209348 (NJ), with an estimated value of $50,490, with export attempted by Royce Autos, Inc.;

vi.  **Defendant Vehicle #6**: Mercedes Benz · ML350, VIN# 4JGDA5HB7DA232561 (NJ), with an estimated value of $49,900, with export attempted by Royce Autos, Inc.;

- 3 -

    vii.  **Defendant Vehicle #7**:  2014 BMW X6 X Drive 35I, VIN# 5UXFG2C51E0C43138 (NJ), with an estimated value of $60,725, with export attempted by Western Motor Group LLC; and

   viii.  **Defendant Vehicle #8**:  2013 Mercedes Benz GL350 Bluetec, VIN# 4JGDF2EE9DA231068 (NJ), with an estimate value of $61,495, with export attempted by Western Motor Group LLC.

3.    The Defendant Property was seized pursuant to a seizure warrant issued by the Honorable Jillyn K. Schulze, United States Magistrate Judge, on May 23, 2013. The Defendant Property is presently in the custody of the United States Secret Service.

### Jurisdiction and Venue

4.    Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. The Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture pursuant to 28 U.S.C. § 1355(a), and over this particular action under 18 U.S.C. § 981 and 19 U.S.C. § 1595a.

5.    The Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6.    Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

- 4 -

**Basis for Forfeiture**

7.      The Defendant Property is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and

(C) because:

      a.      it was involved in a transaction or attempted transaction in violation of 18 U.S.C.

          §§ 1956(a)(2)(A) and 1956(h); and

      b.      it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.

          §§ 1343 and 1349.

8.      18 U.S.C. § 1956(a)(2)(A) makes it unlawful to transport, transmit, or transfer, or attempt

to transport, transmit, or transfer a monetary instrument or funds to a place in the United States

from or through a place outside the United States, with the intent to promote the carrying on of

specified unlawful activity.  Also, 18 U.S.C. § 1956(h) makes it unlawful to conspire to violate

18 U.S.C. § 1956(a)(2)(A).  Types of specified unlawful activity include wire fraud and

conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and smuggling, in

violation of 18 U.S.C. § 554.

      a.      As described below, the Defendant Currency was transferred from outside the

          United States (China) to banks inside the United States, in the form of wire

          transfers or letters of credit.

      b.      Also as described below, the transfers were made with the intent to purchase

          vehicles through straw buyers and to export those vehicles from the United States,

          using means that violate 18 U.S.C. §§ 1343, 1349, and 554.

    c.      Under 18 U.S.C. § 981(a)(1)(A), the Defendant Currency and the Defendant Vehicles are property involved in the 18 U.S.C. §§ 1956(a)(2)(A) and 1956(h) violations and thus subject to forfeiture.

9.     18 U.S.C. § 1343 makes it unlawful, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.  Further, 18 U.S.C. § 1349 makes it unlawful to conspire to violate 18 U.S.C. § 1343.

    a.      As described below, the Defendant Vehicles were purchased under false pretenses by straw buyers with funds sent to the United States from outside the United States as part of a wire fraud scheme and conspiracy in violation of 18 U.S.C. §§ 1343 and 1349.

    b.      Under 18 U.S.C. § 981(a)(1)(C), the Defendant Vehicles are property constituting or derived from proceeds traceable to the violation of 18 U.S.C. §§ 1343 and 1349 and thus subject to forfeiture.

10.    The Defendant Property also is subject to forfeiture pursuant to 19 U.S.C. § 1595a(d), which reads, in pertinent part, as follows:

> Merchandise exported or sent from the United States or attempted to be exported or sent from the United States contrary to law, or the proceeds or value thereof, and property used to facilitate the exporting or sending of such merchandise, the attempted exporting or sending of such merchandise, or the receipt, purchase, transportation,

concealment, or sale of such merchandise prior to exportation shall be
seized and forfeited to the United States.

11.     The Defendant Currency is subject to forfeiture under 19 U.S.C. § 1595a(d) because it

was the "value" of "merchandise exported or sent from the United States contrary to law," that is,

the value of other vehicles (not the Defendant Vehicles) previously exported or sent from the

United States by the same companies involved in the purchase and export of the Defendant

Vehicles.  Also, the Defendant Currenty is subject to forfeiture under 19 U.S.C. § 1595a(d)

because it was "used to facilitate the . . . attempted exporting or sending of such merchandise

[from the United States contrary to law" and the "receipt, purchase, transportation, concealment,

or sale of such merchandise prior to exportation."

12.     The Defendant Vehicles are subject to forfeiture under 19 U.S.C. § 1595a(d) because they

constitute "merchandise . . . attempted to be exported or sent from the United States contrary to

law."  The eight vehicles were attempted to be exported or sent from the United States in

violation of 18 U.S.C. §§ 1956, 1343, 1349, and 554 and 13 U.S.C. § 305(a)(2).

### Background

13.     Automobile manufacturers generally prohibit the sale of new automobiles produced for

sale inside the United States to individuals or companies intending to export the new automobiles

outside the United States.  The unauthorized export of vehicles destined for sale in the United

States to foreign countries disrupts the manufacturers' distribution markets, causes market

infringement, harms franchise dealerships abroad, and makes it difficult for manufacturers to

issue recall and safety notices.

14.     However, luxury automobiles often carry a higher purchase price, and high taxes and

tariffs overseas.  As a result, individuals will frequently attempt to export new vehicles from the

United States to foreign countries in contravention of this prohibition.

15.     To deter the purchase of luxury automobiles in the United States for immediate export to

overseas nations, many luxury automobile manufacturers enter into contractual relationships with

their licensed dealerships.  These relationships prohibit a dealership from selling a vehicle to an

individual, or company, who intends to export that vehicle.  These contractual relationships

include provisions permitting manufacturers to implement a "Charge Back" as a financial penalty

against a dealership if that dealership is discovered to have sold a vehicle that is subsequently

exported.  The Charge Back often requires the dealership to pay back any incentives or rebates

tied to that vehicle, and also may reduce the number of authorized vehicles provided as the

following year's inventory at that dealership.

16.     A typical scheme, though not the only type of scheme, usually involves a broker that acts

on behalf of another to arrange a deal or negotiate a purchase.  The broker might receive an order

for a specific type of vehicle from an overseas buyer.  The broker will then contact various

dealerships, posing as a leasing company or other similar entity, to find and purchase that

vehicle, not informing the dealership that the vehicle is actually intended for export from the

United States.

17.     One way to prevent the dealership from thinking the broker will export the vehicle is to

provide the dealership with an "end user's" name that can be verified.  An "end user" is required

by the dealerships when a vehicle is purchased by another vehicle dealer or leasing company so

- 8 -

they can verify the ultimate destination of the vehicle. In many cases, the "end user" is a fictitious name, nominee, or straw buyer recruited by the broker as part of the scheme.

18.     By acquiring a vehicle in this manner, the broker is both misleading the dealership into selling a vehicle that will be immediately exported and titling the vehicle so it may be sold overseas as a new vehicle. The broker or straw buyer who acquires the new vehicle is not the end user or ultimate purchaser. The vehicle, when exported, then looks like it has a legal title. However, it has not been transferred by the dealer to the ultimate purchaser; instead, it is exported under the name of the broker or leasing company, who by law should have sold the vehicle to the ultimate purchaser as they told the dealership when purchasing the vehicle. Instead, the broker sells the vehicle as a new vehicle overseas. By purchasing and titling the vehicle in this manner, the broker can resell the vehicle as a new vehicle overseas as it has never been titled in the name of an individual.

19.     Additionally, the broker, leasing company, or dealership should have then collected sales tax from the end user in the state in which the vehicle is sold and, instead of exporting the vehicle, transferred title legally. The vehicle is subsequently exported as a new vehicle by the broker who obtained the title through false or fraudulent means instead of being transferred to the end user as represented. This deprives the state in which the sale occurs of the appropriate sales tax.

20.     Finally, the vehicle is shipped from the United States to an overseas destination. When any vehicle is shipped overseas, a Shipper Export Declaration (hereinafter "SED") must be filed with the United States Customs and Border Protection, United States Department of Homeland

Security (hereinafter "CBP"). The SED includes information about the vehicle including the vehicle identification number (hereinafter "VIN"), as well as information related to the title the vehicle was issued in the state the vehicle was sold.

21.     Frequently, individuals engaged in the illegal exportation of vehicles will submit false information on the SED in an attempt to conceal that the vehicle is a new vehicle and likely a vehicle involved in the type of scheme discussed above.  Alternatively, these individuals fail to identify the VIN for the vehicles being shipped, which omission effectively conceals from the automobile manufacturer the fact that the vehicle is being exported.  Under 13 U.S.C. § 305, it is unlawful to knowingly submit false or misleading export information through the SED, or any successor document, or to knowingly report any information on the SED or use the SED to further any illegal activity.

## Facts

22.     In February 2013, United States Secret Service ("USSS") agents received information regarding the banking activities of PNC bank customer Ake Zheng, who is the authorized owner of Golden Skyways Inc.  On information and belief, the account was being utilized to facilitate a trade-based money laundering scheme.  Ake Zheng and other account holders utilizing the Golden Skyways account were traveling to various states (including Maryland), obtaining cash withdrawals, and purchasing official cashier's checks payable to luxury car dealerships throughout Maryland.

23.     USSS has verified through independent witness interviews that, at times, Golden Skyways and other companies like it collaborate and, at other times, they work separately.  USSS has identified certain brokers, companies, bank accounts, exporters, and straw-buyers, including:

a.      **Auto Investment Enterprise Corporation**, associated with Wei Zheng and Ake Zheng;

b.      **Golden Skyways Incorporated**, associated with Ake Zheng, Wei Zheng, Rufang Yan, Yu Su Wu, Qian Liang, Tzu Han Hsiao, Xu Yuan, and Yang Liu;

c.      **Southeast Autos Rentals and Leasing Corporation**, associated with Ake Zheng, Nan Wang, Qian Liang, and Xu Yuan;

d.      **Western Motor Group LLC**, associated with Ake Zheng and Yifan Zhu;

e.      **Auto USA Management**, associated with Ake Zheng and Juanyoung Zhang; and

f.      **Royce Autos Incorporated**, associated with Jian Lu and Kai Qu.

24.     USSS agents conducted extensive research into the auto brokers involved in the scheme, their bank accounts, and the method and means by which they fund the purchases of high-end luxury vehicles and export them.  The investigation has identified four broker groups purchasing vehicles in Maryland through the use of straw buyers, who will be referred to as follows:

a.    "Auto Investment Enterprise Corporation Group of Brokers";

b.    "Golden Skyways Incorporated Group of Brokers" (which includes Western Motor Group and Auto USA Management);

c.    "Southeast Autos Rental and Leasing Group of Brokers"; and

d.    "Royce Auto Incorporated Group of Brokers".

25.     Through financial analysis of bank documents, investigators have determined that accounts owned and operated by the above-mentioned broker groups in the United States have received foreign monetary credits in the form of official letters of credit and wire transfers. Often these funds are converted directly into cashier's checks made payable to luxury car dealerships throughout the United States, including the State of Maryland, for the purchase of new BMWs, Mercedes Benzes, Porsches, and Range Rovers. Additionally, funds from these accounts are often transferred, including via wires and personal checks, to other operating accounts by the broker groups for the purchase of new vehicles and payment of services to straw buyers, freight forwarders, and shipping and logistics companies. Often these letters of credits, wires, cashier's checks, and personal checks identify VINs for the subject vehicles that are to be purchased. These accounts are owned and operated by Auto Investment Enterprise Corporation, Golden Skyways, Southeast Autos Rental and Leasing, Western Motor Group, Auto USA Management, and Royce Auto.

26.     Set forth below are examples of the approximate percentages of incoming money into each seized bank account that originated in a foreign country in various time periods. The percentages below, however, are under-representative of the true percentage of funds that originated in a foreign country, because many of the other sums in the bank accounts were derived from funds that originated in a foreign country after first being transferred through one of the other seized accounts:

        i.   Wells Fargo account ending in #7695 in the name of Golden Skyways, Inc.:
             **42.28% from November 2012 to May 2013**

    ii.  Wells Fargo account ending in #8639 in the name of Golden Skyways, Inc.: **0% from October 2012 to February 2013**;

    iii.  Wells Fargo account ending in #3223 in the name of Golden Skyways, Inc.: **0% from October 2012 to February 2013**;

    iv.  Wells Fargo account ending in #8787 in the name of Southeast Autos Rentals and Leasing Corp.: **4.45% from November 2012 to May 2013**;

    v.  Wells Fargo account ending in #6095 in the name of Royce Autos, Inc.: **66.64% from February 2012 through June 2013**;

    vi.  Wells Fargo account ending in #2633 in the name of Western Motor Group LLC: **0% from January 2013 to May 2013**;

    vii.  BB&T Bank account ending in #1489 in the name of Southeast Autos Rentals and Leasing Corp.: **0% from February 2013 to May 2013**;

    viii.  BB&T Bank account ending in #1785 in the name of Golden Skyways, Inc.: **7.84% from October 2012 to May 2013**;

    ix.  First General account ending in #4127 in the name of Auto Investment Enterprise Corp.: **45.89% from January 2012 to May 2013**; and

    x.  First General account ending in #4721 in the name of Golden Skyways, Inc.: **83.38% from January 2012 to May 2013**

27.    The laundering of these funds through multiple accounts with different corporation names at different financial institutions appears to be designed for no other purpose than to disguise and conceal the true identity and nature of the funds.

28.     Though not all of the Defendant Currency was sent directly from overseas, all of the Defendant Currency is forfeitable under the statutes previously discussed. For example, property involved in a money laundering offense, forfeitable under 18 U.S.C. § 981(a)(1)(A), includes both the subject matter of the money laundering offense and property used to facilitate the money laundering offense. Additionally, the volume of inter-account transfers between and among the accounts holding the Defendant Currency leave no reasonable grounds to believe anything other than that all of the Defendant Currency originated overseas or that commingling of funds from overseas with other funds made the money laundering offense easier to commit or harder to detect. Moreso, as previously discussed, all of the Defendant Currency is forfeitable as the value of the previously exported vehicles, under 19 U.S.C. §1595a.

29.     **Auto Investment Enterprises Corporation:** Auto Investment Enterprises Corporation has an address of 9663 Garvey Avenue, Suite 207, South El Monte, California. Auto Investment Enterprises maintains corporate account ending in number 4127 with First General Bank. The authorized signature on this account is Wei Zheng, the brother of Ake Zheng. At all times referenced in this Complaint, First General Bank was an insured bank of the Federal Deposit Insurance Act (12 U.S.C. § 1813(h)), whose deposits were insured by the Federal Deposit Insurance Corporation, rendering it a "financial institution" as defined by 31 U.S.C. § 5312(a)(2)(A), and, therefore, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)).

30.     From April 1, 2012 thru March 31, 2013, Auto Investment Enterprises account number 4127 with First General Bank received approximately 738 credits totaling approximately $77,814,971.47. The account conducted approximately 1,639 debit transactions totaling

approximately $77,208,730.24 to other accounts in the United States along with some

transactions to overseas locations. The account received over 170 Official Letters of Credits and

wire transfers from overseas locations. For example, on May 25, 2012, the account received a

Letter of Credit from Industrial Bank Co. Ltd. Beijing, as detailed in Letter of Credit

#LA12172AI from its customer known as China Qing An Int'l Trading (Group) Co. Ltd. The

letter of credit was for $1,160,000 and was for the purchase of twenty new Mercedes Benz

vehicles purchased in the United States. The documents subject to this Letter of Credit identify

twenty individual VINs. CBP database queries indicate all twenty of the vehicles were exported

from the United States to China in 2012.

31.    A sample of financial transactions between April 1, 2012 and April 30, 2013 indicate that

Auto Investment Enterprise Corporation conducted wire transfers and other credits as described

below:

> a. In the amount of approximately $13,969,573.74 to Golden Skyways's Wells Fargo
>
>    Bank account ending in number 7695. One such wire transfer occurred on
>
>    February 21, 2013, with $233,436.81 being credited to the Golden Skyways
>
>    account. The wire references four new vehicles.
>
> b. In the amount of $4,696,156.89 to Golden Skyways's BB&T Bank account ending
>
>    in 1785. One such wire transfer occurred on October 12, 2012, with $397,925.33
>
>    being credited to the Golden Skyways account. The wire references seven new
>
>    BMW VINs.

c. In the amount of $1,742,759.71 to Southeast Autos Rental and Leasing's Wells Fargo Bank account ending in 8787.  One such wire transfer occurred on February 11, 2013 in the amount of $350,068.00 being credited to the account.  The wire referenced seven new BMW VINs.  Another such wire occurred on March 20, 2013, in the amount of $144,673.64 being credited to Southeast Autos Rental and Leasing's BB&T Bank account ending in 1489.  The wire references two new VINs.

d. In the amount of $467,687.83 to Western Motor Group LLC's Wells Fargo Bank account 2633.  One such wire transfer occurred on March 12, 2013, in the amount of $157,451.06, being credited to the account.  The wire references three new BMW VINs.

e. In the amount of $100,000.00 to Royce Auto's Wells Fargo account ending in 6095.

f. In the amount of $124,928.08 to Auto USA Management's Wells Fargo Bank account ending in 2805 from Auto Investment Enterprises account ending in 4127.  One such wire transfer occurred on March 15, 2013, with $50,963.54 being credited to the account.  The wire references a new BMW VIN.

32.     Additionally, six vehicles were purchased using funds traced from Auto Investment Enterprises's First General Bank account ending in 4127.  As evidenced by the bank records, none of the straw buyers used their own funds to purchase any of these vehicles.  All of these

vehicles were purchased in Maryland, initially titled in Virginia, and exported from the United States to China in 2012.

33. **Golden Skyways Inc.:** Golden Skyways Inc. has an address of 263 E. Main Street, Suite B, Newark, Delaware and 22977 Eaglewood Court, Suite 130, Sterling, Virginia. Golden Skyways maintains corporate account ending in 4721 with First General Bank, with Ake Zheng (a/k/a Kevin Zheng), Wei Zheng (a/k/a Curtis Zheng), and others listed as the authorized signers.

34. USSS has identified the following operating accounts for Golden Skyways Inc.:

    a.     First General Bank Account ending in 4721;

    b.     Wells Fargo Bank Account ending in 7695;

    c.     Wells Fargo Bank Account ending in 8639;

    d.     Wells Fargo Bank Account ending in 3223;

    e.     Wells Fargo Bank Account ending in 7549; and

    f.     BB&T Bank Account ending in 1785.

35. Eighteen vehicles were purchased using funds traced from the above six Golden Skyway bank accounts. As evidenced by bank records, none of the straw buyers used their own funds to purchase any of these vehicles. All of these vehicles were purchased in Maryland, New York, and Virginia and were initially titled in various states, including Virginia. These vehicles were exported from the United States to China in 2012 and 2013.

36. **Western Auto Group:** According to the Texas State Department of Licensing and Regulatory Affairs, Western Auto Group has an address in Garland, Texas. Western Auto Group was incorporated by Kevin Zheng on February 13, 2013.

37.    Two vehicles were purchased using funds traced from Western Auto Group's Wells

Fargo Bank account ending in number 2633.  As detailed previously, Auto Investment Enterprise

Corporation conducted transactions in the form of a wire transfer on March 12, 2013, in the

amount of $348,215.00 to that Western Motor Group account.  As evidenced by bank records,

none of the straw buyers used their own funds to purchase any of these vehicles.  The wire

references three new BMW VINs, and two of the vehicles were exported from the United States

to China in March and April 2013.

38.    **Auto USA Management:**  According to the Maryland State Department of Licensing and

Regulatory Affairs website, Auto USA Management has an address in Owings Mills, Maryland.

Auto USA Management was incorporated by Juanyong Zhang on January 11, 2013.

39.    One vehicle was purchased using funds traced from Auto USA Management's Wells

Fargo Bank account number ending in 2805.  As detailed previously, Auto Investment Enterprise

Corporation conducted transactions in the form of a wire transfer on March 15, 2013, in the

amount of $124,928.08 to that Auto USA Management account.  As evidenced by bank records,

none of the straw buyers used their own funds to purchase any of these vehicles.  The wire

references a new BMW.  This vehicle was exported from the United States to China on April 5,

2013.

40.    **Southeast Autos Rental and Leasing:**  Southeast Autos Rental and Leasing has an

address of 1903 E 131st Avenue, Tampa, Florida.  Southeast Autos Rental and Leasing was

incorporated by Nan Wang on October 23, 2012 and lists Wei Zheng as the "CEO."  Southeast

Autos Rental and Leasing maintains corporate account number ending in 8787 with Wells Fargo

Bank, with Ake Zheng and Nan Wang listed as the authorized signers. At all times referenced in this Complaint, Wells Fargo Bank was an insured bank of the Federal Deposit Insurance Act (12 U.S.C. § 1813(h)), whose deposits were insured by the Federal Deposit Insurance Corporation, rendering it a "financial institution" as defined by 31 U.S.C. § 5312(a)(2)(A), and, therefore, a "financial institution" as defined by 18 U.S.C. § 1956(c)(6)).

41.     From December 10, 2012 thru February 6, 2013, Southeast Autos Rental and Leasing's account ending in number 8787 received two incoming wire transfers totaling $1,294,312 from customers and financial institutions in China.

42.     A sample of financial transactions between April 1, 2012 and April 30, 2013 indicates that Southeast Autos Rental and Leasing conducted wire transfers and other credits in the amount of $399,997.48 from Auto Investment Enterprises's First General Bank account ending in 4127. One such transaction occurred on March 20, 2013, when the Southeast Autos Rental and Leasing account received a wire transfer totaling $144,673.64 from the Auto Investment Enterprise Corporation. The wire referenced two new VINs. Both vehicles were purchased in Florida in March 2013 and were subsequently exported from the Port of New York to China in April 2013.

43.     Three vehicles were purchased using funds traced from Southeast Autos Rental and Leasing bank accounts at Wells Fargo Bank (ending in 8787) and BB&T Bank (ending in 1489). Bank records show this flow of funds. Furthermore, straw buyer Juanyong Zhang is an authorized signatory of Wells Fargo account ending in 2805 belonging to Auto USA Management. This account has funded the purchase of numerous vehicles that have been exported from the United States to China. As evidenced by bank records, Juanyong Zhang did

not use his own funds to purchase this vehicle. These vehicles were purchased in Maryland and Florida and were initially titled in Maryland and Florida before being exported from the United States to China on December 31, 2012.

44.     **Royce Auto Inc.:** Royce Auto Incorporated has an address of 1405 N. Cedar Crest Blvd, #115, Allentown, Pennsylvania. Royce Auto Incorporated maintains the corporate account ending in 6095 with Wells Fargo Bank, with Jian Lu and Kai Qu listed as authorized signatories. According to official records, Royce Auto Incorporated was incorporated by Jian Lu and Kai Qu on October 6, 2011.

45.     From April 1, 2012 thru March 31, 2013, Royce Auto's Wells Fargo account ending in 6095 received credits totaling approximately $34,480,262.09. Additionally, the account sent approximately $34,270,954.18 to other accounts in the United States along with some transactions to overseas locations. The account received over 50 letters of credit and wire transactions from overseas locations. All of the Letters of Credit originated from China, totaled $16,728,450.00, and referenced the purchase of 277 new BMWs, Porsches, and Mercedes Benzes.

46.     A sample of financial transactions between April 1, 2012 and April 30, 2013 indicates that Royce Auto Incorporated conducted wire transfers and other credits as described below:

> a.  In the amount of $1,606,000.00 to Golden Skyways's BB&T Bank account ending in 1785. Additionally, on November 16, 2012, personal check number 1089 in the amount of $400,000.00 was drawn from the Royce Auto's Wells Fargo

- 20 -

account and deposited into Golden Skyways's Wells Fargo Bank account ending in 7695.

b. In the amount of $1,050,000.00 to Southeast Autos Rental and Leasing BB&T Bank account ending in 1489.

c. In the amount of $80,000.00 to Auto USA Management Wells Fargo Bank account ending in 2805. Two vehicles which were identified in the above mentioned Letter of Credit # LC12000049 which was received by Royce Auto's Wells Fargo account ending in 6095. All of these vehicles were purchased in the United States and exported to China in 2012.

### Interviews

47.　In April 2013, USSS agents conducted interviews of dealership managers and attorneys in Montgomery County, Prince George's County, and Howard County, Maryland. During the course of these interviews, representatives from BMW, Mercedes, and Land Rover stated that auto exporting was a major problem, and that they often felt they had to "act as the police," because nobody seemed to be trying to stop the practice. One such dealership advised that they decline approximately three to five sales per month due to this type of scheme.

48.　Managers from various dealerships stated that auto exporters would initiate vehicle purchases typically in the following manner: purchase of a "base" model vehicle (high-end luxury SUVs), black or white in color, payment in full with an official bank check and no need to see or test drive the vehicle. A Porsche dealership provided USSS with a copy of the "Porsche – Suspected Brokers List." The list identifies Wei Zheng, Ake Zheng, and Golden Skyways as

suspected brokers who have purchased new vehicles in the United States and subsequently exported them in the past.

49.    USSS agents working on a separate, similar investigation interviewed employees of a dealership in Columbia, South Carolina, who stated that they could sell their entire lot inventory of Porsches in a day to auto exporters, because the demand was so high. They stated they turned down fifteen to sixteen suspected auto exporters per week.

50.    In May 2013, straw buyer E.R. was interviewed regarding the purchase of a new BMW bearing VIN#5UXZV4C57D0B16228. During the interview, E.R. advised he purchased and titled two vehicles after replying to an advertisement on the internet website Craig's List. He stated two unidentified men met him at a BMW dealership in Silver Spring, Maryland. The individuals provided instructions on how to complete the transaction. To complete the transaction, E.R. was paid $100 per vehicle. As evidenced by bank records, E.R. did not use his own funds to purchase the vehicles. The vehicles he purchased in Maryland were titled in Virginia.

51.    In May 2013, straw buyer D.P. was interviewed regarding the purchase of a new Mercedes Benz bearing VIN#4JGDA5HB1DA101352. During the interview, D.P. advised he purchased three vehicles and titled them after he was approached by two unidentified males who lived in his sister's apartment complex in Chantilly, Virginia. He stated two unidentified men met him at the EuroMotors dealerships in Bethesda and Germantown, Maryland, and at Passport BMW in Prince George's County, Maryland. The individuals provided instructions on how to complete the transactions, for which D.P. was paid $50. As evidenced by bank records, D.P. did

not use his own funds to purchase the vehicles. The vehicles he purchased in Maryland were titled in Virginia.

## The Instant Seizures

52.     Set forth below are examples of the exporting companies using straw buyers to purchase the seized vehicles and circumvent the law:

    a.  **Defendant Vehicle #3**: On March 29, 2013, P.X. leased the Defendant Vehicle #3 from a dealership. The vehicle was eventually paid off by Auto Investment Enterprises Corp. from its First General Bank account ending in #4127.

    b.  **Defendant Vehicle #5**: N.P., an individual, recruited another individual, J.B.M., to pick up a vehicle at a Mercedes-Benz dealership in West Chester, Pennsylvania. On April 29, 2013, N.P. drove J.B.M. to the dealership and provided J.B.M. with a cashier's check from Wells Fargo account ending in #8639, registered to Golden Skyways, in order to pay for a new Mercedes-Benz. J.B.M. provided the cashier's check to the dealership for the purchase of Defendant Vehicle #5.   The dealership records indicate that the vehicle was registered to J.B.M. at the time of purchase. J.B.M. then drove the vehicle to Newark, Delaware, where J.B.M. dropped it off at the Golden Skyways office. J.B.M. was then compensated $250. Defendant Vehicle #5 was one of three vehicles purchased by J.B.M. for N.P. and Golden Skyways, for each of which J.B.M. was compensated $250.

    **c.  Defendant Vehicle #6**: A.Z., an individual, introduced another individual, R.C.J., to two employees of Auto Investment Enterprises in Texas.  Defendant Vehicle #6 was one of three vehicles purchased by R.C.J. for Auto Investment Enterprises for which he was paid a total of $1,500.  One of the payments for R.C.J.'s services on behalf of Auto Investment Enterprises came from a $300 check issued from the Western Motor Group's Wells Fargo account ending in #2633.

    **d.  Defendant Vehicle #7**:  The same N.P. involved in the purchase of Defendant Vehicle #5 recruited another individual, B.S.M., to pick up a vehicle at a BMW dealership in West Chester, Pennsylvania.  On April 29, 2013, N.P. drove B.S.M. to the dealership and provided B.S.M. with a cashier's check from Louviers Federal Credit Union in order to pay for a new BMW.  B.S.M. provided the cashier's check to the dealership for the purchase of Defendant Vehicle #7.   The dealership records indicate that the vehicle was registered to B.S.M. at the time of purchase.  B.S.M. then drove the vehicle to Newark, Delaware, where B.S.M. dropped it off at the Golden Skyways office.   B.S.M. was then compensated $100.  Additionally, bank records show that Bronze Wing LLC, from its Wells Fargo account ending in #4426, issued a check to B.S.M. on April 26, 2013 for $250.  Western Motor Group later attempted to export the vehicle.

53.    As shown in part through the examples above, the aforementioned auto exporters used various straw buyers to circumvent rules established by auto manufacturers not to export vehicles

intended to be bought and operated in the United States. The straw buyers title vehicles not belonging to them, and these vehicles are subsequently exported out of the United States. A series of international (China to United States) and domestic wires are used to fund the cashier's checks for purchases of vehicles.

54.     On May 23, 2013, U.S. Magistrate Judge Jillyn K. Schulze District of Maryland, issued warrants authorizing the seizure of the Defendant Property.

55.     As a result of the execution of the seizure warrants, the extant account balances and all incoming deposits from May 23, 2013 through June 22, 2013, were seized, resulting in a seizure totaling $1,472,539.37, and all vehicles to be exported were seized resulting in a total seizure of eight vehicles with an estimated value of $389,790.

56.     The below information describes exemplary types of violations (in these instances, violations of 13 U.S.C. § 305 and 19 C.F.R. § 192.2(a), (b)(1)(i), and (b)(1)(ii)) based on what was reported on, or omitted from, the SED for the Defendant Vehicles:

      a.  **Defendant Vehicle #1**: The SED claims the vehicle is used and titled in California but California state records contain no title.

      b.  **Defendant Vehicle #2**: The SED claims the vehicle is used and titled in California but California state records contain no title.

      c.  **Defendant Vehicle #3**: The SED lists no title.

      d.  **Defendant Vehicle #4**: The SED lists no title.

      e.  **Defendant Vehicle #5**: The SED lists no VIN and no title.

      f.  **Defendant Vehicle #6**: The SED lists no VIN and no title.

g. **Defendant Vehicle #7**: The SED lists no title.

h. **Defendant Vehicle #8**: The SED lists no VIN and no title.

<u>**Claim for Relief**</u>

57.     For the reasons stated herein, the U.S. currency and vehicles are subject to forfeiture because they were involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956; they represent or are traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. §§ 1343 and 1349; and they meet the forfeiture requirements of 19 U.S.C. § 1595a(d).

58.     Accordingly, the United States respectfully requests that the Court forfeit the Defendant Property to the United States, award costs and disbursements in this action to the United States, and order any other relief that the Court deems appropriate.

Respectfully submitted,

ROD J. ROSENSTEIN
UNITED STATES ATTORNEY

Thomas P. Windom
Sujit Raman
Assistant United States Attorneys
6500 Cherrywood Lane, Suite 200
Greenbelt, MD 20770
(301) 344-4433

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, Andrew Hoch, hereby verify and declare under penalty of perjury that:

1.  I am a Special Agent with the United States Secret Service.

2.  I have read the foregoing Verified Complaint for Forfeiture, and know the contents thereof, and the matters contained in the Verified Complaint for Forfeiture are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and, as to those matters, I believe them to be true.

3.  The information contained in this Verified Complaint for Forfeiture comes from the official files and records of the United States, statements from other law enforcement officers, and my investigation of this case.

I state and verify under penalty of perjury that the foregoing is true and correct.

Andrew Hoch
Special Agent, United States Secret Service

Dated: February 25, 2014

- 27 -